WM. WOOD, Appellee, v. C. W. LAMBERT *et al.*, Appellants.

Conveyance of Real Estate : FRAUD: CANCELLATION. The plaintiff, a man of about seventy-one years of age, and owner of one hundred and twenty acres of land, having married his step-sister's daughter, was made to believe, through the representations of the defendants, that unless he disposed of his lands and left the state, his children would prosecute him for incest. As a result the plaintiff disposed of all his personal property, valued at about seven hundred dollars, conveyed his lands to the defendants for about two-thirds their cash value, without the knowledge of his nearest relatives, and hastily left the state, going to a remote railway station in company with one of the defendants, at about two o'clock in the morning. There was in fact no trouble between the plaintiff and his children, and no one contemplated instituting proceedings against him, as alleged by the defendants. *Held*, that the deed to the defendants was properly set aside.

*Appeal from Fremont District Court.*—HON. GEORGE CARSON, Judge.

WEDNESDAY, MAY 25, 1892.

ACTION to set aside a deed of conveyance. From a decree for the plaintiff, the defendants appeal.

*A. R. Anderson* and *Wm. Eaton*, for appellants.

*W. E. Mitchell* and *Geo. E. Draper*, for appellee.

GRANGER, J.—About the first of April, 1889, the plaintiff made to the defendants a deed for one hundred and twenty acres of land in Fremont county, for a consideration of two thousand dollars, and this action is to set aside and cancel said deed, and the following are the specific allegations upon which the decree is asked: "That defendants came to the plaintiff with false statements, and told plaintiff that his boys, Joseph

Wood, W. H. Wood and Samuel Keyser were conspiring to prosecute the plaintiff for incest, and if he didn't convey the land and leave the state his children would prosecute him for said crime; that said statements induced the plaintiff to sell and convey the lands; that the plaintiff, being old and infirm, his mind was easily wrought upon, and weak and infirm, not sound, and unfit to transact business of such a character, and could not judge of the value of the land; that this occurred about the month of March, 1889, and the plaintiff relied upon the representations of defendants, and, because of his old age and infirmity of mind, made the conveyance named."

Some facts are without dispute, which we first notice. The plaintiff, at the time of the conveyance, was a man between seventy-one and seventy-two years of age. He was married to and living with a second wife, having by his first marriage a family of sons and daughters now grown to manhood and womanhood. It was thought and talked by some, whether true or not, that the marriage to his second wife was within the prohibited degrees, she being a daughter of a "half-sister" of the plaintiff. The plaintiff knew of this talk, and stated to some, and, among the number, to the defendant, C. W. Lambert, that his wife was afraid of trouble because of their marriage. The plaintiff and C. W. Lambert went together to see a lawyer about the matter, and the plaintiff was told to "go home and rest contented." The plaintiff's present wife and the wife of C. W. Lambert are sisters. After the visit to the lawyer, C. W. Lambert went away and was absent for two years, during which time there seems to have been no fears or difficulty apprehended because of the marriage. The deed was made to the defendants, and in the night after, about two o'clock, the plaintiff started for a railway station in company with C. W. Lambert, without any particular destination in

view, leaving directions for Lambert to ship him his goods when he should inform him where he was. Soon after, Lambert received word to ship the goods to Ft. Scott, which he did. The station at which the plaintiff took the train when leaving was some nine miles from his home, and there was another station about two and one-half miles away, from which the same train could have been taken and at a later hour. Before leaving, the plaintiff disposed of all his personal property, of something like seven hundred dollars in value. It may be stated as beyond controversy, that the plaintiff, because he or his wife, or both, feared a prosecution on account of his marriage, disposed of his entire property and left the state. It may further be said that it does not appear that there was a legal basis for a prosecution, nor that any person contemplated instituting such proceedings, but there was some talk that the marriage was illegal and the parties might be prosecuted.

The disputed facts are mainly with reference to the value of the land conveyed and to the part taken by the defendants in bringing about the sale of the lands. As to the value of the land, the testimony is very much in conflict. It ranges from two thousand, the price paid, to thirty-six hundred dollars. We think, under the testimony, that its value can safely be put at three thousand dollars. In fact, it appears that it could be actually sold for that. The plaintiff had lived in the same community for about thirty years, and his children were married and some were living about him. The record does not disclose that there was any trouble between him and his children, unless perhaps the children were not pleased with his second marriage. The evidence is quite conclusive as showing that the plaintiff, in his advanced age, was quite susceptible to influence by others, and that he confided in the defendant, C. W. Lambert. It is not reasonably to be claimed that the

plaintiff, without being influenced by some person, disposed of all his property for much less than its value in as secret a way as it could well be done, unbeknown to his nearest relatives and friends, unless he himself believed, because of his guilt, that he would be prosecuted. Such a belief is not consistent with other facts that are without dispute. Soon after the plaintiff's marriage, the question of its legality was in some way doubted and he, with C. W. Lambert, went to Sidney and consulted a lawyer, who assured him that he had nothing to fear, although it is claimed by the appellants that the plaintiff and his wife often said they were afraid the plaintiff's children would make them trouble and that such fears were the cause of a desire to sell and go away. It is well established that during the time Lambert was away, for two years after the conference with the lawyer, there was no difficulty or apprehension of trouble. It was after Lambert's return to the neighborhood and he became a neighbor to the plaintiff by a purchase of a part of his farm, that fears were again excited, and with the results that have been mentioned. These facts alone are quite significant. The plaintiff and his wife both testified that C. W. Lambert, and to some extent, T. P. Lambert, his co-defendant, told them they would be arrested and sent to the penitentiary, advised them to sell and go away, and often repeated the statement to them and named parties who would prosecute, and among them the plaintiff's children. The defendant, C. W. Lambert, was the confidant and aid of the plaintiff in the entire transaction of disposing of his property and leaving the state and was left as the plaintiff's business agent to arrange unsettled affairs. The plaintiff took his departure with such haste that the breakfast table was left standing, carpets on the floor, and clothing hanging on the hooks to be packed and sent forward by Lambert. Unless in some way inpressed by the idea of immediate danger,

why this haste? The record affords no sufficient means for tracing the cause of such an impression, except to the defendants. The relation of the defendants to the entire transactions of the selling and the removal, and the keeping of it as a secret from those entitled to know —the children ·of the plaintiff—after the departure, aided by the testimony of the plaintiff and his wife, lead to a quite satisfactory conclusion that the sale of the farm was the result of a fraudulent plan to frighten the plaintiff and obtain the land for less than its actual value. Many other facts might be noted in support of this conclusion, and of course there are those of a contrary bearing.

Viewing the testimony as a whole, we are well satisfied with the finding and conclusion of the district court, and the judgment is AFFIRMED.